IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL H. SMITH, | ) | CASE NO.: 1:21-cv-00160 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT CUYAHOGA** |
| CUYAHOGA COUNTY, | ) | **COUNTY'S REPLY IN SUPPORT OF** |
| | ) | **ITS MOTION FOR SUMMARY** |
| Defendant. | ) | **JUDGMENT** |
| | ) | |
| | ) | |

Defendant Cuyahoga County ("the County") respectfully submits the following reply in

support of its Motion for Summary Judgment, ECF # 28.  Plaintiff Paul Smith has failed to

present any issue of material fact warranting trial and the County is entitled to summary

judgment pursuant to Fed.R.Civ.P. 56.

**A.  Smith implicitly concedes that summary judgment is appropriate with respect to several issues by failing to respond at all.**

Smith fails to respond to many of the issues raised by the County in its motion for

summary judgment.  As a result, Smith has implicitly conceded these arguments.  *Church Mut.*

*Ins. Co. v. First United Pentecostal Church of Parma*, N.D.Ohio No. 1:11cv2201, 2012 U.S.

Dist. LEXIS 117607, at \*14 (Aug. 20, 2012)(collecting cases).  Specifically, Smith concedes:

- Smith's psychological condition, which is allowed by the Bureau of Workers'

    Compensation, rendered him unable to return to work in any capacity after June 2019.

    MSJ, ECF # 28-1, PageID# 1167.  After this date, Smith could not perform the

    essential functions of his Leadman position without regard for whether the County

could accommodate his physical restrictions concerning exposure to dust and other irritants.

- Smith's disability separation pursuant to County policy and Ohio law does not constitute "adverse action" for the purposes of his ADA claim because he retained the right to appeal and reinstatement. *Id.* at PageID# 1169.

- The County has articulated a legitimate business reason for assigning Smith to train with its construction crews in 2018. *Id.* at PageID# 1172. In his opposition, Smith offers no more than inuendo and his own speculation that this decision was racially motivated. *Burnette v. Wilkie*, N.D.Ohio No. 1:18cv1179, 2019 U.S. Dist. LEXIS 161272, at *31-32 (Sep. 17, 2019), citing *Lovelace v. BP Prods N. Am. Inc.*, 252 F.App'x 33, 40-41 (6th Cir. 2007).

- The County has articulated a legitimate business reason for disability separating him, namely the expiration of all available leave. MSJ, ECF # 28-1, at PageID# 1170. Smith has not pointed to any evidence suggesting the County acted with pretext.

- In any case, Smith's reassignment within the same job classification without reduction in pay or status did not constitute "adverse action" for the purposes of his race discrimination or retaliation claims. *Id.*, PageID# 1169-1170.

The County is entitled to summary judgment because Smith simply failed to respond to many of the issues presented and has implicitly conceded them.

**B. <u>Smith does not point to any evidentiary support for the factual assertions in his objection.</u>**

When opposing a motion for summary judgment under Fed.R.Civ.P. 56, Smith cannot rely on the pleadings, conclusory allegations, and unsubstantiated assertions. *M.J. v. Akron City School Dist. Bd. of Edn.*, N.D.Ohio No. 5:18cv577, 2020 U.S. Dist. LEXIS 74270, at *19 (Apr.

28, 2020), citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  Instead, Smith must

present affirmative evidence supporting his position.  *Id.,* citing *Bell v. Ohio State Univ.,* 351

F.3d 24, 247 (6th Cir. 2003).

Smith does not submit any evidentiary materials at all in support of his filing and cites

both sparingly and selectively to documents in the record.  Smith does not cite to any legal

authority at all, other than unspecified "EEOC law."  See: Opp., ECF # 29 at PageID# 15919-

1520.  Moreover, as set forth below, many of Smith's factual assertions improperly contradict

the undisputed record evidence, including Smith's own deposition testimony.  *Briggs v. Potter,*

463 F.3d 507, 512-513 (6th Cir. 2006).

Even as a *pro se* litigant, Smith is not excused from adhering to Fed.R.Civ.P. 56 by

opposing the County's motion with proper summary judgement evidence.  *Reed v. Mohr*,

S.D.Ohio No. 2:19-cv-738, 2020 U.S. Dist. LEXIS 189714, at *9 (Oct. 13, 2020), citing *Moore*

*v. Holbrook*, 2 F.3d 697, 705 (6th Cir. 1993).

For this reason, the factual assertions[1] in Smith's opposition must simply be disregarded

as unsupported.  The County will nonetheless respond to each of Smith's three numbered

assertions in his opposition in the order in which he presents them.

C.  **Response to Assertion 1 (ECF # 298 at PageID# 1517-1518): Smith continues to
    misstate the nature of both his position and his medical restrictions.**

Smith begins by suggesting that Dr. David Garcia's Independent Medical Examination is

flawed because Dr. Garcia did not consider the possibility of permanently assigning Smith to the

---

[1] Arguments in Smith's brief that are not supported by citations to the record are not evidence
worthy of consideration at the summary judgment stage.  *Duha v. Agrium,* 448 F.3d 867, 879
(6th Cir. 2006).

"CCTV, Jet Vac, I&I, and House Lateral departments/assignments."  ECF # 29 at PageID# 1517.

Smith is wrong for at least four reasons.

*__First__*, Smith's Leadman position was never limited to performing any particular

assignment, such as CCTV or construction.  Instead, Leadmen are required to supervise crews

performing a variety of tasks and assignments.  According to Smith's undisputed job description,

permanent assignment to particular crews or tasks was "not possible."  See: MSJ, ECF # 28-1 at

PageID# 1154-1155, Leadman Job Description, Smith Ex. 10, PageID# 595-597.  To the extent

that Smith disagrees and contends that his position was ever limited to working in the Camera

Truck, a labor relations dispute over this issue was undisputedly and conclusively resolved in

favor of the County.  MSJ, ECF # 28-1 at PageID# 1155-1156.

In order to make a *prima facie* showing on his ADA claim, Smith must establish that he

could perform the essential functions of his Leadman position as whole (with or without

reasonable accommodation), not simply that he could perform selected job assignments such as

working in the Camera Truck or that he was unable to perform other specific tasks, such as catch

basin repair.  See: *Bratton v. SSI Services, Inc.,* 185 F.3d 625, 632 (6th Cir. 1996) (a proposed

accommodation that required other employees to perform the more physical aspects of a job not

reasonable on its face).

*__Second__,* the County relied on far more than Dr. Garcia's IME when it determined that

Smith could not perform the essential functions of his Leadman position.  Over more than two

years, Smith submitted a total of seven different MEDCO-14's in support of his Workers'

Compensation claim indicating that he could have "no exposure" to a wide variety of substances[2]

---

[2] See, e.g. Smith 113:2-113:9; Ex. 76: "air particulate of sawed-off wood fumes, topsoil, asphalt concrete, vitrified clay, mortar, fumes from gas cleaner and mist from manhole entry and feeding hose."

inevitably found around sewers and construction sites.  (Smith Ex. 70-76, PageID # 756-768).

Smith submitted the same "no exposure" restrictions as part of an FMLA request and two ADA

accommodation requests.  (Smith 140:19-140:25, Ex. 18 PageID # 620-621; Smith 146:17-

147:18, Ex. 16, PageID # 602-619; Smith Ex. 19, PageID # 622-623).  Dr. Garcia's IME

concluded that Smith was unable to perform the essential functions of his position.  (Smith

167:7-167:1, Ex. 34, PageID# 679-682).

Importantly, the Bureau of Workers' Compensation and the Ohio Industrial Commission

allowed Smith's claim for Temporary Total Disability due to his occupational asthma and Smith

has collected over $100,000 in Workers' Compensation benefits.  (Smith Ex. 33, PageID # 660-

678).  Smith cannot simply ignore this contradiction: he must present affirmative evidence

showing that he can perform the essential functions of his job despite the BWC's determination

otherwise.  MSJ, ECF # 28 at PageID # 1165-1166, citing *Cleveland v. Policy Mgmt. Sys. Corp*.,

526 U.S. 795, 806 (1999).

Moreover, "an employer making an employment decision may rely upon a medical

opinion that is objectively reasonable."  *Cooley v. E. Tenn. Human Res. Agency, Inc.,* 720

F'Appx 734, 744 (6th Cir. 2017), citing *Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307

(6th Cir. 2015).  "[Dr. Garcia] examined [Smith] and issued a medical opinion that [Smith] was

not fit for duty.  [Smith] has offered no evidence calling this opinion into doubt."  *Id.*

At this stage, Smith is under an affirmative obligation to present some medical evidence

showing that he was able to perform the essential functions of his Leadman position.  Because

Smith offers no more than his own speculation, the County is entitled to summary judgment on

his ADA claims.

_**Third,**_ Smith testified at his deposition that he could not perform nearly all of the potential job assignments expected of Leadmen, or any other employee in the Sewer Maintenance Division, based on his work restrictions, including construction, house laterals and jet-vacs.  (Smith 105:12-105:22).  Smith now seems to improperly contradict his own deposition testimony by suggesting that he <u>could have</u> performed these functions.  Opp., ECF# 29 at PageID# 1517-1518. The Court must credit Smith's sworn deposition testimony over his unsupported assertions in his response to a motion for summary judgment.

_**Fourth,**_ even if the County was obligated to consider permanently assigning Smith to the Camera Truck (and it was not), Smith would have still been regularly exposed to construction sites and sewers.  (Hitch dec. at ¶¶ 16-20, ECF # 28-3, PageID# 1284-1285).  Indeed, the County's Standard Operating Procedures for CCTV inspections clearly depict workers standing over open manholes positioning equipment.  (Hitch dec. Ex. A, ECF # 28-3 at PageID# 1445, 1447-1449).  Notably, Smith's medical restrictions proscribe exposure to "mist from manhole entry."  (Smith 113:2-113:9; Ex. 76, PageID# 767).

As a result, permanent assignment to the Camera Truck would not have effectively accommodated Smith's medical restrictions.  *Horn v. Knight Facilities Mfmt.-GM*, 556 F.App'x. 452, 455 (6th Cir. 2014) (janitor who submitted a doctor's restriction that she could have "no exposure" to cleaning products was not qualified for her position, even with accommodation).

**D.  <u>Response to Assertion 2: (ECF # 29 at PageID# 1518-1521): Smith is entitled to a reasonable accommodation, not the accommodation of his choice.</u>**

Smith appears to acknowledge that he consistently and flatly refused to consider reassignment to another position in the County as a possible ADA accommodation of his medical

restrictions.  Instead, Smith appears to insist that the County's <u>only</u> option was to permanently assign him to the Camera Truck.[3]  Not so.

As an initial matter, Smith suggests that the County improperly applied a "100% Healed" policy to his situation.  Opp., ECF # 29 at PageID# 1518.  Smith fails to cite to any record evidence supporting this assertion.  In fact, as outlined in the County's opening brief, both the County and Smith's union repeatedly advised him to seek another medical opinion clarifying his medical restrictions that would permit him to return to his leadman position.  MSJ, ECF # 28-1 at PageID# 1161-1162.  Smith never did.  Instead, Smith filed an unsuccessful Unfair Labor Practice charge against his union.  (Smith 203:15-204:7).

More importantly, "the law in this circuit does not entitle the employee to an accommodation of her choice, but only a reasonable accommodation.  *** No discrimination occurs where the employment is terminated as a result of the employee's refusal to engage in the interactive process."  *Sloan v. Repacorp, Inc.,* 310 F.Supp.3d 891, 900 (S.D. Ohio 2018), citing *Hankins v. The Gap,* 84 F.3d 797, 801 (6th Cir. 1996); *EEOC v. Prevo's Family Mkt.,* 135 F.3d 1089, 1096 (6th Cir. 1998).

Reasonable accommodation under the ADA may include reassignment to a vacant position when an employee cannot return to his former position.  *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007).  Here, the undisputed evidence shows that the County

---

[3] As noted above, a permanent assignment to the Camera Truck would not have been reasonable because it would have eliminated nearly all of the other essential duties of the Leadman position. See: *Watters v. Summit Cty.*, N.D.Ohio No. 5:14cv2390, 2016 U.S. Dist. LEXIS 84358, at *22 (June 29, 2016) citing *Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*, 509 F. App'x 527 (6th Cir. 2013)(permanent assignment of a corrections officer to property room is not "reasonable on its face" to accommodate restriction preventing her from the essential function of interacting with inmates.)  Moreover, this accommodation would not have been effective because it would not comply with Smith's "no exposure" medical restrictions.  *Horn,* 556 F'Appx at 455, citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002).

7

repeatedly offered to assist Smith to identify other open positions suitable in light of his medical restrictions. MSJ, ECF # 28-1 at PageID# 1161-1163.  Smith flatly refused to consider this option.[4]  (Smith 192:20-194:108; Cmplt, ECF # 1 at ¶ 50).  In his Summary Judgment response, Smith continues to insist (without basis) that the County somehow wronged him by discussing reassignment to another open position.  In fact, the County was attempting to follow the ADA by assisting Smith in finding another position.

Smith simply does not offer any legal or factual support for his contention that he could refuse to discuss reassignment simply because he wrongly believed that he could insist on the unreasonable and ineffective accommodation of permanent assignment to the Camera Truck.

**E.** **Response to Assertion 3: (ECF # 29 at PageID# 1521-1522): Choukalas is not an appropriate comparator because he was able to perform all of the essential functions of the Leadman role.**

Smith seeks to distinguish his employment decisions from his alleged comparator.  See: ECF # 29 at PageID#1521-22.  However, the record before the Court makes clear that Smith's proposed comparator (Ted Choukalas) is not comparable because medical professionals found him **fit** to perform the Leadman duties while Smith was not, and Choukalas was similarly denied permanent assignment to the Camera Truck.

In order to establish a *prima facie* case of disability or race-based discrimination under the ADA and Title VII, Smith must be able to or identify at least one comparable employee outside the protected classification who was similarly-situated in all relevant respects, but who nonetheless received more favorable treatment.  For a co-worker to be "similarly situated,"

---

[4] Smith's Union President David York and the union's attorney, James McGowen, advised Smith that he should not consider any position outside of his current Leadman position.  (Smith 181:22-182:10; 183:20-183:21; Smith Ex. 25 at PageID# 634-638). Smith agreed to follow the advice of his union, even characterizing them as "orders." (Smith 184:2).

plaintiff needs to show that they are the same in all relevant aspects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002). A court must "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee" rather than presume that specific factors must be present. *Gibson v. Shelly Co.*, 314 F. App'x. 760, 771 (6th Cir. 2008). The employees must "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Smith's circumstantial evidence of ADA and Title VII discrimination is based on his mistaken belief that another Leadman with breathing difficulties was provided the job modification Smith demands (i.e., exclusively receiving Camera assignments). The record does not support this comparison. Smith plainly acknowledges that the independent medical examiner "determined that Choukalas was fit for duty and could perform the essential duties of a leadman." *Id.* at PageID# 1522. In contrast, the independent medical examiner in Smith's case found that he could not perform the leadman duties. Smith Ex. 34 at PageID# 682 ("In my medical opinion, he is not capable of returning to the essential functions of this exact position due to the different varieties of potential allergens that he had been exposed to."). The County is not being selective in what constitutes the essential functions of the Leadman position. The essential functions are what they are (including performing catch basin repair and rehabilitation services), and the medical professionals opined that Choukalas can perform them while Plaintiff cannot. Therefore, Smith and Choukalas are not similarly situated in the most relevant respect.

Moreover, Smith's *prima facie* case for ADA or Title VII discrimination requires a showing that the alleged comparator was treated more favorably than Smith.  *Adebisi v. Univ. of Tennessee*, 341 Fed. Appx. 111, 112 (6th Cir. 2009).  Smith's proposed comparator was not treated any more favorably.  Despite what Smith's unsworn, unsubstantiated self-serving argument in his response brief may contend, Choukalas is currently routinely assigned to construction crews and has not been regularly assigned to the Camera Truck since 2018.  Hitch dec., ECF # 28-3, at ¶21 PageID# 1285.   Rather than being treated less favorably, Smith was treated exactly the same as his alleged comparator.  Both were denied Plaintiff's requested accommodation to strip away all job duties from the Leadman position other than Camera Truck assignments, and both were assigned to perform construction services repairing catch basins.  *Id.* at ¶¶10-11, 13 and 21.  Doctors found that Smith was medically unable to resume his duties; however, Choukalas could safely return to work.

**F.  <u>Conclusion.</u>**

For the foregoing reasons, Smith has either failed to respond to arguments presented in the County's Motion for Summary Judgment (ECF # 28) or has failed to present evidence showing an issue of material fact for trial.  The County is entitled to summary judgment on all of Smith's claims.

10

MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

By:    /s/ *Michael J. Stewart*
       MICHAEL J. STEWART (0082257)
       Phone: (216) 443-6673
       mjstewart@prosecutor.cuyahogacounty.us
       MARK R. MUSSON (0081110)
       Phone: (216) 443-7795
       mmusson@prosecutor.cuyahogacounty.us
       The Justice Center, Courts Tower
       1200 Ontario Street, 8th Floor
       Cleveland, Ohio   44113
       Fax: (216) 443-7602

*Attorneys for Defendants Cuyahoga County*

## CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(F)

This memorandum is 10 (ten) pages long (not including this certificate). This memorandum complies with L. R. 7.1(f).

## CERTIFICATE OF SERVICE

A copy of the foregoing will be sent to all parties of record via the Court's electronic filing system in addition it was mailed via first class U.S. mail postage prepaid pursuant to Fed. R. Civ. P. 5(b)(2)(C) on November 10, 2021 to:

Paul Smith
5556 Broadview Road, Apt. 3423
Parma, Ohio 44134

/s/ *Michael J. Stewart*
MICHAEL J. STEWART (0082257)

11